# EXHIBIT F



ROSS MILLER
Secretary of State
204 North Carson Street, Ste 1
Carson City, Nevada 89701-4299
(775) 684 5708
Website: secretaryofstate.biz

| Filed in the office of | Document Number |
|---|---|
| *signature* Ross Miller Secretary of State State of Nevada | 20080255993-73 |
| | Filing Date and Time 04/14/2008 1:50 PM |
| | Entity Number C5856-2001 |

## Certificate of Amendment
(PURSUANT TO NRS 78.380)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                              ABOVE SPACE IS FOR OFFICE USE ONLY

### Certificate of Amendment to Articles of Incorporation
### For Nevada Profit Corporations
(Pursuant to NRS 78.380 - Before Issuance of Stock)

**1. Name of corporation:**

TCI Courtyard, Inc.

**2. The articles have been amended as follows (provide article numbers, if available):**

Article Three: Purpose
The Corporation's business and purpose shall consist solely as the following:
(i) The acquisition, operation and disposition of the real estate project know as the Quail Hollow Apartments at the Lakes located at 7000 Quail Lakes Drive, Holland, OH 43528, and as further limited by the Single Purpose Entity Provisions attached hereto as Exhibit "A".

(ii) To engage in such other lawful activities permitted to corporations by the General Corporation Laws of the State of Nevada as are incidental, necessary or appropriate to the foregoing.

ARTICLE FOUR: Limitations on Authority
As per attached Single Purpose Entity Provisions Exhibit "A".

**3.** The undersigned declare that they constitute **at least two-thirds** of the incorporators ☐, or of the board of directors ☒ (check one box only)

**4.** Effective date of filing (optional): _____
(must not be later than 90 days after the certificate is filed)

**5.** The undersigned affirmatively declare that to the date of this certificate, no stock of the corporation has been issued.

**6.** Signatures (If more than two signatures, attach an 8 1/2" x 11" plain sheet with the additional signatures.)

X *signature*                                X *signature*
      Signature                                         Signature

**IMPORTANT:** Failure to include any of the above information and submit the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*                  Nevada Secretary of State Amend 78.380 2007
                                                                                           Revised on 01/01/07



325

## Exhibit A
## SINGLE PURPOSE ENTITY PROVISIONS

The business and purpose of TCI Courtyard, Inc., a Nevada corporation (the ACompany@) shall consist solely of the acquisition, operation and disposition of the real estate project known as the Quail Hollow Apartments at the Lakes (the "Property") and to assume the obligations of the loan transaction entered into with Wells Fargo Bank, N.A. f/k/a Wells Fargo Bank Minnesota, N.A. as Trustee for the registered holders of JP Morgan Chase Commercial Mortgage Pass-Through Certificates, Series 2001-C1, its successors and assigns (the "Lender") for the original principal amount was for $12,360,000.00 ("Loan"). The Company shall:

(a) not own, hold or acquire, directly or indirectly, any ownership interest (legal or equitable) in any real or personal property other than (i) the Property, and (ii) incidental personal property necessary for the ownership or operation of the Property;

(b) not engage in any business other than the ownership, operation and disposition of the Property;

(c) not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than (i) the Loan, and (ii) unsecured trade payables (and not evidenced by a promissory note) related to the ownership and operation of the Property and incurred in the ordinary course of business and which shall not exceed: (i) 60 days in duration from the date such trade payables are first incurred by the Company, and/or (ii) in the aggregate, 2.0% of the original principal balance of the Loan;

(d) maintain its assets, accounts, books, records, financial statements, stationery, invoices, and checks separate from and not commingled with any of those of any other person or entity;

(e) conduct its own business in its own name, pay its own liabilities out of its own funds (including paying salaries of its own employees), allocate fairly and reasonably any overhead for shared employees and office space, and maintain an arm's length relationship with its affiliates;

(f) hold itself out as a separate entity, correct any known misunderstanding regarding its separate identity, and observe all organizational formalities;

(g) not guarantee or become obligated for the debts of any other entity or person or hold out its credits as being available to satisfy the obligations of others, including not acquiring obligations or securities of its partners, members or shareholders'

(h) not pledge its assets for the benefit of any other entity or person or make any loans or advances to any person or entity;

(i) not enter into any contract or agreement with any Principal, as defined in the mortgage securing the Loan, or any party which is directly or indirectly controlling, controlled by or under common control with Company or Principal (an "Affiliate"), except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any Principal or Affiliate;

j) maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and maintain a sufficient number of employees in light of its contemplated business operations;

(k) not dissolve or wind up, in whole or in part, and no member of the Company shall seek the dissolution or winding up, in whole or in part, of the Company, and the Company will not merge with or be consolidated into any other entity;

(l) maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any constituent party of the Company, Affiliate, Principal or any other person; and

(m) obtain and maintain in full force and effect, and abide by and satisfy the material terms and conditions of, all material permits, licenses, registrations and other authorizations with or granted by any governmental authorities that may be required from time to time with respect to the performance of its obligations under the mortgage securing the Loan.

Until such time as the Loan has been repaid in full, the Company shall not amend, modify or terminate any of these provisions of the Company's **Articles of Incorporation or Bylaws** without the prior written consent of the Lender.